UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:19-CV-60967

MICHEL BOSSEN and MARIA VIERA,

    Plaintiff,

v.

LUMBER LIQUIDATORS, INC.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**<u>INJUNCTIVE RELIEF SOUGHT</u>**

Plaintiffs MICHEL BOSSEN and MARIA VIERA ("Plaintiffs"), by and through undersigned counsel, seeks redress for the wrongful practices and/or conduct of Defendant LUMBER LIQUIDATORS, INC. ("Defendant" or "Lumber Liquidators").

**1.**     <u>**JURISDICTION & VENUE**</u>

1. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. 1332 because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue in this District is proper because the actions that gave rise to this action accrued in the District.

3. This Court has personal jurisdiction over Lumber Liquidators because: (a) Lumber Liquidators is operating, present, and doing business within this jurisdiction, and (b) Lumber Liquidators breaches and illicit activity occurred within this jurisdiction.

1 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

## 2. PARTIES

4. Plaintiff is a natural person, and a citizen of the State of Florida, residing in Miami-Dade County, Florida.

5. Lumber Liquidators is a Delaware corporation, with its principal place of business located and headquartered at 3000 John Deere Road, Toano, VA 23168.

6. Lumber Liquidators distributes, markets, and/or sells composite laminate flooring products and actively conducts business throughout the United States.

## 3. FACTUAL ALLEGATIONS

### 3.1 NATIONAL FORMALDEHYDE STANDARD

7. The State of California has established standards for formaldehyde. These standards have been adopted industry-wide. Defendant explicitly claimed to have adhered to these standards; however, as discussed further below, such claim was entirely false.

8. In 1988, the State of California officially listed formaldehyde (gas) as a chemical known to cause cancer.

9. In 1992, California Air Resources Board ("CARB") formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

10. CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007. The formaldehyde emission standards became effective January 2009 and set decreasing limits in two phases. CAL. CODE REGS. tit. 17, § 93120.2(a).

11. The CARB regulations apply to composite wood ("laminate") products including flooring. CAL CODE REGS. tit. 17, § 93120.2(a).

12. The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009, to

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm"). The Phase 2 Emission Standard for MDF dictates that, as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 ppm of formaldehyde. The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009, to December 31, 2011, limited formaldehyde emissions to 0.21 ppm. The CARB Phase 2 Emission Standard for Thin MDF dictates that, as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde.[1]

13. The CARB regulations specify the test methods that may be used to determine whether products meet the CARB limit. A product does not comply with CARB emission standards if the composite wood product was produced by an uncertified manufacturer or used certain materials without CARB approval, or if record of testing conducted by the manufacturer or a third-party certifier show that a particular composite wood product exceeded the CARB limit.[2] In addition, a product does not comply with CARB emission standards if:

> A composite wood product produced by a manufacturer is tested at any time after it is manufactured, using either the compliance test method specified in section 93120.9 (a) or the enforcement test method specified in section 93120.9(b), and is found to exceed the applicable emission standard specified in Table 1.[3]

14. Compliance with the CARB limits is based on the results of testing the composite wood products contained in finished goods, not the finished goods themselves. The compliance test method specified in section 93120.9(a) incorporates the test method specified in ASTM D 6007-02, as promulgated by the America Society for Testing and Materials.

---

[1] CAL. CODE REGS. tit. 17, § 93120.2(a). (Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.")
[2] CAL. CODE REGS. tit. 17, § 93120.2(a)(1), (2).
[3] CAL. CODE REGS. tit. 17, § 93120.2(a)(3).

15. In September 2013, CARB issued a document entitled Standard Operating Procedures for Finished Good Test Specimen Preparation Prior to Analysis of Formaldehyde Emissions from Composite Wood Products. These Standard Operating Procedures direct the methods to be used to deconstruct finished goods and to remove the coating or laminate before testing the underlying composite wood product for formaldehyde emissions.

**3.2   LUMBER LIQUIDATORS' COMPOSITE LAMINATE FLOORING PRODUCTS**

16. Defendant supervises and/or controls the manufacturing and packaging of composite laminate flooring products in China that Defendant then distributes, markets, and/or sells in California and throughout the country. Those composite laminate flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit. Those composite laminate flooring products include, but are not limited to, the "**12 mm Dream Home St. James Vintner's Reserve Laminate Flooring**."

17. CARB regulations apply to the above-mentioned flooring product.

18. The Lumber Liquidators composite laminate flooring product listed in ¶ 16 is manufactured in China using a common formula, design, or process.

19. The Lumber Liquidators composite laminate flooring product listed in ¶ 16 contains formaldehyde gas at levels that exceed the CARB limits and is several times higher than comparable products.

**3.3   LUMBER LIQUIDATORS MISREPRESENTS THAT ITS COMPOSITE LAMINATE FLOORING PRODUCTS MEET C.A. EMISSIONS STANDARDS**

20. Despite unlawful levels of formaldehyde emissions from its composite laminate flooring products, Defendant misrepresents to consumers on its website, product packaging, and warranties that its composite laminate flooring products meet the CARB standards for formaldehyde emissions.

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

21. In addition, the product packaging for Lumber Liquidators' composite laminate flooring states: "CARB … CALIFORNIA 93120 Phase 2 Compliant Formaldehyde." This statement is presented on all Lumber Liquidators' composite laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

22. Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

23. Instead of warning consumers about formaldehyde levels in its composite laminate flooring products, Lumber Liquidators' website stated that it has Third Party Certifiers approve its flooring products to meet CARB standards.

24. Notwithstanding the above assurances, on a conference call with investors, Lumber Liquidators' CEO conceded that deconstructive tests that Lumber Liquidators itself conducted before a *60 Minutes* broadcast had even aired revealed high levels of formaldehyde.[4]

25. Lumber Liquidators materially misrepresented the safety of its composite laminate flooring products by advertising and representing that its flooring products are compliant with the CARB limit when in fact they did not.

26. Lumber Liquidators materially omitted any disclosure to consumers that they were buying composite laminate flooring products with excessive or unlawfully high levels of formaldehyde compared to U.S.-manufactured products.

27. These composite laminate flooring products have been sold by Defendant for use in California and throughout the country for more than four years.

---

[4] *See* http://www.cbsnews.com/news/lumber-liquidators-ceo-admits-tests-showed-high-formaldehyde-levels/ (last visited September 11, 2015).

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

28. Defendant continued to distribute and sell its composite laminate flooring products to customers in California and throughout the country with the representation that they are CARB compliant, long after it knew they were not compliant.

29. At all times relevant to this action, Lumber Liquidators has knowingly misrepresented its composite laminate flooring products as CARB compliant and knowingly failed to disclose to consumers the excessive and unlawful levels of formaldehyde emissions from its composite laminate flooring products.

30. At the same time that Defendant made public statements to consumers that the composite laminate flooring products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers – all to increase its sales – Defendant said just the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, **we do not control our suppliers**. Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner. Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner could … expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[5]

---

[5] Lumber Liquidators' February 25, 2014 10-K at p. 14 (available at http://investors.lumberliquidators.com/index.php?o=25&s=127) (emphasis added). In the same filing, Lumber Liquidators represents that it oversees quality control in its Chinese mills:

> "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures."

Id. at p. 5.

6 | P a g e
**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

31. Despite its stated concern that its suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise its quality control over those suppliers to ensure that they comply with CARB standards, and Defendant continued to sell to California consumers, and to consumers throughout the country, composite laminate flooring products that Defendant obtained from those suppliers.

32. On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to CARB. The letter and article documented high formaldehyde levels in Chinese-made composite laminate flooring sold by Lumber Liquidators, as shown by tests a certified laboratory conducted on three samples of Chinese-made composite laminate flooring sold by Lumber Liquidators. Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times the maximum formaldehyde emission level. Nonetheless, the letter notes that Lumber Liquidators labeled the product as being CARB compliant.

33. High formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins. By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce composite laminate flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

34. On or about November 26, 2013, a putative federal securities Class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's composite laminate flooring products. <u>Kiken v. Lumber Liquidators Holdings, Inc., et al.</u>, No. 4:13-cv-00157 (E.D. Va.). Lumber

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its composite laminate flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

35. Based on lawsuits, articles, and blog posts, and on its own first-hand knowledge, Defendant knew or should have known that its composite laminate flooring products were not compliant with CARB standards. Despite this knowledge, Defendant failed to reformulate its flooring products so that they are CARB compliant and failed to disclose to consumers that these products emit unlawful levels of formaldehyde. Instead, Defendant has sold composite laminate flooring products in California and throughout the country that exceed the CARB limit while continually representing to consumers that those products are CARB compliant.

36. In response to the *60 Minutes* report, Lumber Liquidators launched a campaign of disinformation in which it attacked the laboratories that conducted the tests showing that its products exceeded CARB limits for formaldehyde. Lumber Liquidators claimed that the tests the laboratories conducted were improper because the laboratories removed the laminate coating before testing the composite core of the Lumber Liquidators flooring. In fact, CARB specifically recommends that laminate coating be removed before testing.

37. Lumber Liquidators next began offering a free home testing kit to customers who purchased its Chinese-made composite flooring products. The third party providing the home testing kits is not independent, but is being paid by Lumber Liquidators. The testing kits being offered do not use testing methods that are commonly accepted and that CARB recommends. The test Lumber Liquidators is offering is inherently unreliable, designed to under-report the formaldehyde levels present in the composite flooring, and is not designed to measure formaldehyde emissions from a particular source.

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

38. Even when Lumber Liquidators' testing kit shows that a home contains concentrations of formaldehyde that have been recognized to be dangerous to human health when inhaled for extended periods, Lumber Liquidators has continued to cover up these findings. Lumber Liquidators has sought to mislead consumers into believing both that the levels of formaldehyde in their homes are "normal" and "safe," when in fact they may be extremely hazardous, and that the Lumber Liquidators flooring is not the cause of the elevated formaldehyde levels in their homes.

39. In cases where results from the laboratory it employs show elevated levels of formaldehyde, Lumber Liquidators first sends the customer a lengthy questionnaire that it uses to shirk responsibility by suggesting that sources of the elevated formaldehyde it found in the home were something other than the Lumber Liquidators flooring.

40. In cases where its tests show results as high as 0.08 parts per million of formaldehyde, Lumber Liquidators has sent letters that state:

> Your results show that formaldehyde levels in your home fall within or below the range of normal indoor air (0.020 to 0.100 parts per million), according to the [EPA's] recent study of formaldehyde. Your level of formaldehyde is similar to the amounts measured in typical U.S. homes.
>
> Based on your test results, it does not appear that your floor is contributing to any abnormal exposure to formaldehyde in your home.

41. The above statements constitute material misrepresentations of fact as to what the EPA has found, levels of formaldehyde that are considered "normal" and "safe" in the United States, and the conclusion that the floors in the home are not contributing to any abnormal exposure to formaldehyde.

42. Rather than seek to effectively remedy the harm and the risks to its customers'

9 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

health and safety caused by its formaldehyde-laden flooring products, Lumber Liquidators has instead sought to cover up the dangers inherent in its products with misinformation and with a disingenuous public relations campaign that is designed to mislead its customers. By offering unreliable testing, by seeking to discredit the laboratories that conducted the tests finding that its products exceeded CARB limits for formaldehyde, and by promulgating misleading information regarding the dangers and properties of formaldehyde, Lumber Liquidators' actions will cause people to believe the floors in their homes are safe when they are not and will expose them to even greater risk than if Lumber Liquidators had honestly addressed the findings of multiple laboratories.

43. In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs fear for their safety in allowing the composite laminate flooring to remain in their homes. It would therefore be reasonable and prudent to incur the cost of removing and replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

### 3.4   FACTS RELATING TO PLAINTIFFS

44. On or about April 2015, Plaintiffs Michel Bossen and Maria Viera purchased approximately 758.4 square feet of 12 mm Dream Home St. James Vintner's Reserve Laminate Flooring at a Lumber Liquidators store located in Miami, Florida. As stated on the packages, this flooring product was produced at a laminate mill located in China.

45. Plaintiffs purchased the composite laminate flooring for the purpose of having it installed in their home. Plaintiffs specifically intended to install the flooring in each of the three bedrooms of Plaintiffs' home, as well as the remainder of the entire second-floor of said home.

10 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

46. Plaintiffs have experience with building materials. Plaintiffs were aware of the risks inherent in formaldehyde and the risk that building products could contain formaldehyde and other dangerous chemicals. Plaintiffs were also aware that California has some of the most exacting emission regulations in the country.

47. Prior to purchasing the composite laminate flooring, Plaintiffs viewed Lumber Liquidators' website. Their safety concerns were satisfied by various representations Lumber Liquidators made regarding the safety of its products and the fact that all of its composite flooring products comply with California emissions standards – no matter where the products are sold.

48. After viewing products on the Lumber Liquidators website, Plaintiffs went to the Lumber Liquidators retail store and ultimately purchased the composite laminate flooring. The label on each of the products stated "California … Phase 2 Compliant for formaldehyde," which further confirmed Plaintiffs' belief, based on Lumber Liquidators' other representations, that the flooring product purchased by Plaintiffs would be safe to install in all the bedrooms of their home.

49. Plaintiffs relied on the representations that the composite laminate flooring they were purchasing did not contain unsafe levels of formaldehyde – and specifically that it contained levels of formaldehyde that met California standards. Plaintiffs would not have purchased the product absent this or an equivalent representation.

50. At the time Plaintiffs purchased the composite laminate flooring product, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

51. At the time of the purchase, Lumber Liquidators also failed to inform Plaintiffs that the composite laminate flooring products Plaintiffs purchased actually exceeded the CARB formaldehyde emission limits, and contained far more formaldehyde than comparable products

11 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

manufactured in the U.S.

52. As planned, Plaintiffs installed the composite laminate flooring in all three bedrooms, as well as throughout the remaining portions of the entire second floor of their home. Installation required pieces of the laminate to be cut which then exposed the composite core.

53. On April 2, 2019, Plaintiffs learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product were false.

54. Plaintiffs arranged to have the Lumber Liquidators composite flooring Plaintiffs purchased tested by an independent professional to determine the level of its formaldehyde content. The results showed formaldehyde levels that exceeded CARB limits and that were unsafe for use in a home.

55. The results of the independent testing revealed formaldehyde concentration in the air at a level that exceeds all recommended threshold limits for chronic exposure in home environments, and that even exceeds recommended threshold limits for a workplace environment (based on an eight-hour exposure to an adult). Upon being informed of the results, Plaintiffs' pediatrician advised that their child should not be allowed to sleep in the room in which the flooring was located and recommended having the flooring removed as soon as possible. Plaintiffs' have followed their physician's advice.

56. Had the Lumber Liquidators composite laminate flooring been CARB compliant as represented, Plaintiffs would have been satisfied with their purchase.

57. Plaintiffs would not have purchased the Lumber Liquidators composite laminate flooring had they known there was a risk that its actual formaldehyde content exceeded the CARB standards.

58. Plaintiffs have suffered injury as a result of Lumber Liquidators'

misrepresentations and omissions in amounts that include the purchase price of the floors, the cost of installing the floors, and the costs involved in replacing the floors.

4. **CAUSES OF ACTION**

### COUNT I.
### FRAUDULENT CONCEALMENT

59. Plaintiffs incorporate by reference paragraphs 1-58 as if fully stated herein.

60. Lumber Liquidators concealed and suppressed material facts concerning the content of formaldehyde in its Chinese-made composite laminate flooring products.

61. Defendant had a duty to disclose the true content of formaldehyde in its Chinese-made composite laminate flooring products because it was known and/or accessible only to the Defendant, who had superior knowledge and access to the facts, and the Defendant knew it was not known to or reasonably discoverable by Plaintiffs. These omitted and concealed facts were material because they directly impact the safety of the flooring products. Whether composite flooring was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern.

62. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs.

63. Lumber Liquidators has still not made full and adequate disclosure and continues to defraud Plaintiffs and conceal material information regarding the levels of formaldehyde that exist in its Chinese-made composite laminate flooring products.

64. Because the omitted facts were material, Plaintiffs are entitled to a presumption and would have acted differently – not purchasing Defendant's Chinese-made laminate flooring or paying less for it – if the true facts had been disclosed to them. And, in fact, Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

concealed and/or suppressed facts. Plaintiffs' actions were justified. Lumber Liquidators was in exclusive control of the material facts and such facts were not known to the public or Plaintiffs.

65. Because of the concealment and/or suppression of the facts, Plaintiffs sustained damage because they purchased and retained flooring products that they would not have purchased or installed in their homes had Defendant timely disclosed the fact that the products were not compliant with CARB standards.

66. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich itself. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT II.
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

67. Plaintiffs incorporate by reference paragraphs 1-58 as if fully stated herein.

68. Defendant's advertising, labeling, and representations regarding the formaldehyde content and compliance with CARB made use of deception, false promises, misrepresentations and material omissions in connection with the sale and advertisement of its composite flooring products. In so doing, Defendant engaged in unlawful, deceptive, and unconscionable trade practices in violation of Fla. Stat. § 501.201, *et seq*.

69. The likelihood, and the possibility that the actual formaldehyde content in Defendant's Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was a material fact of which Plaintiffs should have been informed before purchasing the Lumber Liquidators product.

70. Defendant's failure to inform consumers of the risk that the formaldehyde content

14 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

in its Chinese-made composite flooring products exceeded amounts permitted by the State of California and contained far more formaldehyde than comparable U.S.-manufactured products was likely to deceive reasonable consumers.

71. Defendant's misleading marketing, advertising, packaging, and labeling of its Chinese-made composite flooring products were likely to deceive reasonable consumers.

72. Plaintiffs were deceived by Defendant's deceptive trade practices. Lumber Liquidators' misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs to act or refrain from acting, or had the capacity to attract customers.

73. As a direct and proximate result of Lumber Liquidators' deceptive trade practices, Plaintiffs have suffered damages that include, but are not limited to, the money they paid for the composite flooring products, the time and expense of installing the products, the cost of removing the products, and of otherwise remedying its effects.

74. Lumber Liquidators has acted fraudulently, willfully, knowingly, and in total disregard for the rights, health, and well-being of the Plaintiffs. Defendant knew or should have known that their conduct would result in harm to Plaintiffs. Defendant continued its wrongful conduct nonetheless. Punitive damages should be awarded to deter the actions of Defendant and others who might engage in similar conduct.

75. Plaintiffs are entitled to damages in amounts to be proven at trial, and to an award of fees and costs as allowed under Fla. Stat. § 501.201, *et seq*.

## COUNT III.
## BREACH OF IMPLIED WARRANTY

76. Plaintiffs incorporate by reference paragraphs 1-58 as if fully stated herein.

77. Plaintiffs are "buyers" within the meaning of Florida's implied warranty statute. *See* Fla. Stat. § 672.103.

15 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

78. Lumber Liquidators is a "seller" and its Chinese-made composite laminate flooring products are "consumer goods" within of Florida's warranty statute. *See* Fla. Stat. § 672.103(1)(d); Fla. Stat. § 672.105.

79. Lumber Liquidators impliedly warranted to Plaintiffs that the Chinese-made composite flooring products Plaintiffs purchased were "merchantable" within the meaning of Fla. Stat. § 672.314. However, the Chinese-made composite flooring products do not have the quality that a buyer would reasonably expect and were therefore not merchantable.

80. Lumber Liquidators' Chinese-made composite flooring products would not pass without objection in their trade (because the trade does not accept laminate flooring that emits such high levels of formaldehyde and, in California, that exceeds CARB), are not fit for the ordinary purposes for which such goods are sold (because safety and compliance with applicable governmental regulations is part of ordinary fitness).

81. In addition, Lumber Liquidators breached its implied warranty of merchantability to Plaintiffs because the Chinese-made flooring did not conform to the promises and affirmations of facts set forth on its container and label. As described above, the product packaging stated, "California 93120 Phase 2 Compliant Formaldehyde." The Chinese-made flooring did not meet CARB and all applicable statutes and regulations, as set forth on its container and label. As such, the products do not conform to the promises or affirmations of fact made on the container or label, in violation of Fla. Stat. § 672.314(2)(f).

82. Any attempts by Lumber Liquidators to disclaim the implied warranty of merchantability is unenforceable, as the disclaimer failed to mention the implied warranty of merchantability and were not conspicuous as required by law, and were both procedurally and substantively unconscionable, rendering them unenforceable.

16 | P a g e

**Rodal Law, P.A.**
5300 NW 33rd Ave., Ste. 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

83. As a result, Plaintiffs were injured through their purchase of non-merchantable products.

84. Under Florida's implied warranty statute, Plaintiffs are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Chinese-made composite flooring products, or the overpayment of amounts they paid for the products, along with consequential damages, including the cost necessarily incurred to install and then to remove the flooring products. Plaintiffs are entitled to costs and attorneys' fees.

### COUNT IV.
### NEGLIGENT MISREPRESENTATION

85. Plaintiffs incorporate by reference paragraphs 1-58 as if fully stated herein.

86. Defendant made representations about its Chinese-made laminated flooring products that it did not have reasonable grounds to believe were true. These statements include, inter alia, that the products complied with CARB standards for formaldehyde. Defendant made these representations on its product boxes, on its website, and in its invoices.

87. Defendant's statements regarding its products meeting CARB standards for formaldehyde were false.

88. Defendant had control over the Chinese mills that supplied its laminated flooring products, and had a duty to ensure that its products were in fact complying with the standards that Defendant had represented to its customers the products met.

89. Plaintiffs were induced to purchase Defendant's Chinese-made laminated flooring products as a result of Defendant's negligent misrepresentations, and thereby suffered injury.

5. **PRAYER FOR RELIEF**

   **WHEREFORE**, Plaintiffs seek the following relief against Defendant:

   a. A finding and declaration that Defendant's policies and practices of labeling

    and advertising the composite laminate flooring products it sells in California and throughout the country as CARB compliant are unlawful pursuant to Title 17 of the California Code of Regulations, §§ 93120-93120.12;

b. A finding and declaration that Defendant's policies and practices of distributing and/or selling composite laminate flooring products in California and throughout the country with formaldehyde emissions that violate the CARB standards are unlawful pursuant to Title 17 of the California Code of Regulations, §§ 93120-93120.12;

c. Injunctive relief prohibiting Defendant from continuing to distribute and/or sell composite laminate flooring products that violate the CARB standards;

d. Restitution of all money and/or property that Plaintiffs provided to Defendant for the purchase and installation of Defendant's Chinese-made composite laminate flooring products;

e. Damages in an amount to be determined at trial for damages, including actual, compensatory, and consequential damages incurred by Plaintiffs;

f. Punitive damages where allowable by law;

g. An award to Plaintiffs of reasonable attorneys' fees and costs; and

h. An award of such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

            Respectfully Submitted,

            /s/ Yechezkel Rodal
            **YECHEZKEL RODAL, ESQ.**
            Florida Bar No. 91210
            E-mail:  chezky@rodallaw.com
            **THOMAS J. PATTI, ESQ.**
            Florida Bar No.: 118377
            E-mail:  tom@rodallaw.com
            RODAL LAW, P.A.
            5300 N.W. 33rd Ave., Suite 219
            Fort Lauderdale, Florida 33309

            *Counsel for Plaintiffs*